January Term, 1881, No. 142.          March 29th, 1882.

## Malone *et al. versus* The City of Philadelphia.

1. A municipal corporation is not liable to an action for consequential damages to private property unless it be given by statute, where the act complained of was done under a valid act of the legislature, and there has been no want of reasonable care or of reasonable skill in the execution of the power, although the same act, if done without legislative sanction, would be actionable.

2. Where, therefore, an act of Assembly authorized a municipal corporation to continue a certain culvert or sewer into a river, and the corporation afterward extended it, so that its terminus was near low-water mark of the river, and in consequence the dock adjoining plaintiff's wharf was filled up with débris, and that side of the wharf rendered useless, it was *held* that plaintiff had no cause of action against the corporation, though the sewer could have been carried out into the river to the wardens' line.

Before Mercur, Gordon, Paxson, Trunkey, Sterrett, and Green, JJ.

Error to the Court of Common Pleas, No. 2, of *Philadelphia County.*

Case by Watson Malone and Bernard T. Malone, trading as Watson Malone & Son, against the City of Philadelphia, to recover damages for the erection and continuance of a sewer, by which, as alleged, sewerage was carried into the dock adjoining plaintiffs' wharf, and filled the dock up and made it unfit for navigation.

Upon the trial in the court below, before Hare, P. J., plaintiffs gave the following facts in evidence:

Plaintiffs are in the lumber business, and occupy and have occupied since February, 1870, Pier No. 44, north of Laurel Street, in the City of Philadelphia, under leases from the owners.

By Act of Feb. 25th, 1861, P. L. 43, relating to the city of Philadelphia, it is provided: " And the said councils shall continue the culvert intended to drain Cohocksink Creek, by the shortest practicable course from Front Street along the said creek or canal, and any of the streets hereby authorized to be laid out or already established, into the river Delaware, and upon the completion of the said culvert, and opening the streets so laid out or extended, the said councils are further authorized to fill up the said creek or canal to the proper grade, and declare vacated such parts of it west of Delaware Avenue as may not be occupied by said culvert, or made a part of any of the streets so laid out, in such manner and at such time as they may deem expedient. Provided, that if the said councils decide to construct said culvert on Laurel Street, the owners of property shall be exempt from the usual charges for culverts," etc.

By ordinance approved April 24th, 1868, the city councils authorized a contract for the construction of " a sewer from the east side of Front Street upon the open channel of the Cohocksink Creek (Canal Street) to Laurel Street, thence in said Laurel Street to the Delaware River, with its branches."

Under this authority the city entered into a contract for the sewer, in 1869, and it was completed in March, 1872. The sewer drains 1600 or 1800 acres north and west of plaintiffs' wharf, and there are many manufactories along it. Cohocksink Creek was walled up and its whole drainage turned into the sewer. Its *terminus is very near low-water* line. It could be carried out further into the river, to the wardens' line. Engineers differ in opinion as to the propriety of so carrying out sewers. When plaintiffs took possession of their wharf in 1870, there was sufficient water on the south side in the dock to receive and discharge large-sized vessels. The effect of opening the sewer was to fill up the dock with débris and stuff. At low-water mark it became bare from one side to the other. The city dredged it out in 1874, but in four months it filled up again. With water in the dock, two vessels of five hundred tons burden could be moored there, at a wharfage of five dollars a day each. The ordinary daily discharge from the sewer is about three feet deep. It caused the filling of the dock. It is quite offensive.

Upon this evidence the Court entered a judgment of nonsuit, and subsequently, January, 8th, 1881, discharged a rule to take off the nonsuit.

The plaintiffs then took out a writ of error, assigning as error the refusal to take off the judgment of nonsuit.

*John R. Read* and *Silas W. Pettit*, for plaintiffs in error.

That the defendant is a municipal corporation is no ground for exemption, and in building drains she is exercising merely a private function for the benefit of some of her citizens : Detroit *v.* Corey, 9 Mich., 184 ; Gas Works *v.* Murphy, 3 Wr., 257 ; Shuter *v.* The City, 3 Phila., 228 ; Webster Saving Fund *v.* The City, 7 Casey, 175 ; City *v.* Collins, 18 P. F. Smith, 106 ; City *v.* Gilmartin, 21 P. F. Smith, 140.

The city is liable for injuries caused by the insufficiency or obstruction of sewers : Allentown *v.* Kramer, 23 P. F. Smith, 406 ; Lead Co. *v.* Rochester, 3 N. Y., 463 ; Barton *v.* Syracuse, 36 N. Y., 54 ; Child *v.* Boston, 4 Allen, 41 ; Proprietors *v.* Lowell, 7 Gray, 223.

The injury would have been avoided by carrying out the culvert into the tideway. As constructed it is a public nuisance. The act contemplated its being carried *into* the

Delaware. The river is a public highway, and not even the crown at common law could legalize its obstruction: Hale, de Juris Maris, 11; Attorney-General *v.* Parmeter, 10 Price's Exch. Rep., 378; Browne *v.* Kennedy, 5 Har. & Johns., 203.

The right of navigation is paramount: Hart *v.* Hill, 1 Wharton, 136; Flanagen *v.* City, 6 Wr., 228; City *v.* Gilmartin, 21 P. F. Smith, 149.

The act should be reasonably construed, so as to restrict the construction to such a culvert as would not interfere with navigation. It authorized a sewer extending *into* the river, and the city has only extended it *to* the river.

The wharf is the property of the plaintiffs, and is entitled to the same protection from a nuisance, as are lands. The right to the use of the dock is essential to that of the wharf: Harrison *v.* Sterett, 4 Har. & McH., 540; Browne *v.* Kennedy, 5 Har. & Johns., 203.

The point in this case has been decided: Richardson *v.* Boston, 19 How., 263; Haskell *v.* New Bedford, 108 Mass., 208; Brayton *v.* Fall River, 113 Mass., 218; Boston Rolling Mill *v.* Cambridge 117 Mass., 396.

*C. E. Morgan, Jr.,* and *William Nelson West,* city solicitor, for defendant in error.

The dock was not in any sense the property of the plaintiffs.

An owner of a wharf has no right of property in the adjoining dock. He has only the right to use it in common with the rest of the public—a right subject to the control of the State. It is competent for her at any time to cause the same to be filled up: Neill *v.* Easby, 1 W. N. C., 58; Easby *v.* Patterson, 6 W. N. C., 318; Kusenberg *v.* Browne, 6 Wr., 173; Tinicum Fishing Co. *v.* Carter, 1 P. F. S., 21; Easby *v.* Patterson, 7 W. N. C., 219; Simpson *v.* Neill, 7 W. N. C., 85, 8 Norris, 183.

Any loss was indirect and consequential, the result of the city's compliance with the act of Assembly: O'Connor *v.* Pittsburgh, 6 Harris, 187; Strawbridge *v.* The City, 7 W. N. C., 537; Vaughan *v.* Railroad Co., 5 Hur. & Nor., 679.

There is no evidence of negligence or carelessness in the construction of the sewer.

The determination of the place for the mouth of the sewer the legislature left to the judgment of the municipality. The city, in the exercise of the discretion thus reposed in her, selected for this purpose the low-water line, rather than a point farther out in the stream. For a mistake in the exercise of this discretion she cannot be held responsible to the

[Malone *et al. v.* The City of Philadelphia.]

plaintiffs: see Fair *v.* City, 7 Norris, 309 ; Collins *v.* City, 8 W. N. C., 409 : Hoff *v.* City, 8 W. N. C., 407.

The opinion of the Court was delivered, October 2d, 1882, by TRUNKEY, J.

The Act of February 25th, 1861, P. L., 43, authorizes the councils of the city of Philadelphia to continue the culvert intended to drain Cohocksink Creek, from Front Street into the river Delaware. In 1869, the city entered into a contract for the building of the culvert. It was finished in 1872, the mouth being at the low-water line of the river, at the foot of Laurel Street. The plaintiffs' wharf, held by lease, is materially injured by the filling of the dock, on its south side and in front of the street, with matter discharged from the culvert. Upon these facts the Court entered nonsuit, which judgment is the specification of error. The plaintiffs' title to the land does not extend beyond the low-water line. Outside that line his right is subject to the control of the Commonwealth under her laws. Neither allegations nor proof show want of care or skill in the construction of the culvert, nor that it drains a larger district than was contemplated by the statute, nor that it casts any substance on the plaintiffs' land. The alleged nuisance is in the river, where the title is in the Commonwealth, and where the statute authorized the city to place the mouth of the culvert.

The principle is well settled, that a municipal corporation is not liable to an action for consequential damages to private property, unless it be given by statute, where the act complained of was done under a valid act of the legislature, and there has been no want of reasonable care or of reasonable skill in the execution of the power, although the same act, if done without legislative sanction, would be actionable : Dill. on Mu. Corp., § 781 ; O'Connor *v.* Pittsburgh, 6 Har., 187 ; Allentown *v.* Kramer, 23 P. F. S., 406. Nothing appears in the evidence to take this case out of the operation of that principle.

Judgment affirmed.